IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PAYDHEALTH, LLC,** | : | **CIVIL ACTION** |
| *Plaintiff,* | : | |
| | : | |
| v. | : | |
| | : | |
| **DAWN G. HOLCOMBE d/b/a** | : | |
| **DGH CONSULTING,** | : | |
| *Defendant.* | : | **No. 2:24-00259** |
| | : | |

**MEMORANDUM**

**KENNEY, J.**                                                                                                               **JULY 11, 2024**

On January 19, 2024, Plaintiff Paydhealth, LLC filed a Complaint (ECF No. 1) against Defendant Dawn G. Holcombe d/b/a DGH Consulting ("Holcombe") in this Court alleging that Holcombe made statements about Plaintiff at an industry conference in October 2023 that were defamatory per se. Presently before the Court is Defendant Holcombe's Motion to Dismiss (ECF No. 23), which has been fully briefed (*see* ECF Nos. 29, 30). For the reasons detailed below, the Court will grant Defendant's Motion without prejudice. An appropriate Order will follow.

**I.     BACKGROUND AND PROCEDURAL HISTORY**

On the morning of October 2, 2023, Defendant Holcombe kicked off an industry conference taking place in Philadelphia called "Copay Reimbursement and Access Congress" with a three-hour workshop entitled "Understand the Nuances and Impact of Alternative Funding Programs." ECF No. 1 ¶ 30. Some attended her workshop in-person; others attended virtually. *Id.* It was also recorded and made available online to all conference registrants. *Id.*

During her talk, Holcombe focused on alternative funding programs, or "AFPs." *Id.* ¶¶ 31, 32. AFPs are programs that assist healthcare plan participants in lowering their out-of-pocket costs for specialty drugs—which are ordinarily extremely costly—in part by helping these participants

navigate and access patient assistance programs, or PAPs. *Id.* ¶¶ 19, 31.  Although PAPs can offer co-payment assistance—and/or serve as free or low-cost sources of specialty drugs—to healthcare plan participants, they "lack transparency," are difficult to navigate, and are entirely unregulated. *See id.* ¶¶ 19, 22–29.  As a result, PAPs "likely *enhance* drug makers' bottom lines" instead of helping plan participants save money on high-cost specialty drugs.  *See id.* (emphasis in original).

At the beginning of Holcombe's workshop, she made clear that she intended to "attack" AFPs.  *See id.* ¶ 31.  Holcombe's outline allegedly promised that she would disclose how AFPs "negatively impact patients, especially those who are under/uninsured."  *Id.*  Holcombe also purportedly claimed that AFPs "promis[e]" their health plan sponsors that there will be "[n]o more copays for qualifying employees." *Id.* ¶ 32.

Holcombe also mentioned Plaintiff Paydhealth during her talk.  *See id.* ¶¶ 33–37.  Paydhealth is a company based in Dallas, Texas, that aims to serve as "an advocate to individual workers" and help individual patients navigate "often byzantine [PAPs]." *Id.* at 1, ¶ 2.  For example, if a PAP provided less than full funding of the plan participant's out-of-pocket obligations under his healthcare plan, Paydhealth would help the participant obtain the drugs according to the coverage choices in the plans' policies.  *See id.* ¶ 19.

In speaking about Paydhealth, Holcombe made a number of purportedly false claims.  *See id.* ¶¶ 33–37.  For example, Holcombe accused Paydhealth of relying upon non-existent data to compute savings for its clients. *See id.* ¶ 37.  Additionally, Holcombe allegedly told the conference audience that Paydhealth tells doctors not to use the drug they prescribed, but a different drug that is "more favorable" for Paydhealth to obtain.  *See id.* ¶ 35.  Holcombe also allegedly asserted that Paydhealth disappoints its healthcare plan clients "because they don't get a choice" about whether Paydhealth provides advocacy services to the plan participants, which is untrue.  *Id.* ¶ 34.

2

According to Paydhealth, it and its healthcare plan clients "willingly enter with the advice of plan legal counsel and numerous employee benefit professionals" into contracts that "specify the plans' choice to use Paydhealth's services," including its advocacy services. *Id.*

On January 19, 2024, Plaintiff Paydhealth filed its Complaint against Defendant Holcombe (ECF No. 1) alleging defamation per se based upon the statements that Holcombe made during her October 2, 2023 workshop. On April 30, 2024, Holcombe filed her Motion to Dismiss (ECF No. 23). Paydhealth filed its Response on May 21, 2024 (ECF No. 29) and Holcombe filed her Reply on June 5, 2024 (ECF No. 30). Accordingly, the Motion is ripe for disposition.

## II. <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (internal quotation marks and citation omitted). A complaint is plausible on its face when the plaintiff pleads a factual contention that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, courts must "construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). However, the complaint must provide "more than labels and conclusions, and

a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A complaint need not establish a prima facie case to survive a motion to dismiss. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 788 (3d Cir. 2016). Instead, Plaintiffs need only "put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element," *Fowler*, 578 F.3d at 213 (citation omitted), and "must give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests," *Bayer v. Pocono Med. Ctr.*, No. CIV.A. 3:13-1900, 2014 WL 3670499, at *4 (M.D. Pa. July 23, 2014) (citing *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).

**III.    DISCUSSION**

Defendant seeks to dismiss Plaintiff's Complaint under Rule 12(b)(6) on three independent grounds. ECF No. 23-1 at 12–32. First, Defendant argues that the Complaint should be dismissed because Plaintiff failed to set forth the alleged defamatory statements with "sufficient precision." *Id.* at 12. Second, Defendant argues that Plaintiff is a "limited public figure"; therefore, Plaintiff should have alleged that Defendant acted with actual malice but failed to do so. *Id.* at 15–28. Finally, Defendant argues that even if the Court does not find Plaintiff to be a limited public figure, the Complaint should still be dismissed because Plaintiff has not alleged facts sufficient to show general damages. *Id.* at 28–32. The Court addresses each seriatim below.

   **A.    The defamatory statements pled are "sufficiently precise."**

First, Defendant argues that Plaintiff fails to allege the purportedly defamatory statements with "sufficient precision to evaluate whether they are defamatory." *Id.* at 12. However, the pleading standard for a defamation claim is set forth in Federal Rule of Civil Procedure 8(a), and Plaintiff's allegations are sufficient to meet Rule 8(a)'s pleading standard. *See Mansman v. Tuman*, 970 F. Supp. 389, 393 (E.D. Pa. 1997) ("A federal court sitting in diversity applies the

4

Federal Rules of Civil Procedure.  Therefore, [Rule] 8(a), not Pennsylvania pleading law, governs the standard of specificity applicable to plaintiff's . . . claim[s]." (citations omitted, alteration in original)).

Under Rule 8(a), the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  To meet this standard, a plaintiff asserting a defamation claim need only "allege facts which sufficiently set forth the substance of the alleged defamatory statements to give proper notice of plaintiff's claim to defendants." *Cooper v. City of Chester*, No. CIV.A. 11-5381, 2011 WL 6046934, at *10 (E.D. Pa. Dec. 5, 2011) (citing Fed. R. Civ. P. 8).

Here, the Complaint meets the notice pleading standard under Rule 8(a).  Plaintiff's Complaint is sufficient to give Holcombe notice of the basic nature of Plaintiff's claim and the substance of the defamatory communications that Holcombe allegedly made.  *See, e.g.*, ECF No. 1 ¶ 35 (alleging that Holcombe told the conference audience that Paydhealth tells doctors not to use the drug they prescribed but a different drug that is "more favorable" for Paydhealth), ¶ 37 (alleging that Holcombe "intentionally misrepresented Paydhealth's compensation model . . . [by] failing to note that Paydhealth's compensation depends on support to plan participants, not savings to a plan").  That much is sufficient for the Complaint to survive at this stage.  *See Cooper*, 2011 WL 6046934, at *10 (explaining that defamation claims can survive a motion to dismiss even if the "exact content of the statements in question is unclear" so long as the plaintiff provides enough to detail to put the defendant on "notice of the basic nature of [the] claim and the substance of the defamatory communications").

B.     **Plaintiff is not a "limited public figure."**

Second, Defendant contends that Plaintiff is a "limited public figure" on the topic of AFPs. *See* ECF No. 23-1 at 15; *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974) (explaining that an

"all purpose" public figure is someone who has achieved "such pervasive fame or notoriety that he becomes a public figure for all purposes," whereas a "limited public figure" is someone who has "voluntarily inject[ed] himself or [has been] drawn into a particular public controversy"). If the Court determines that Plaintiff is a limited public figure with respect to AFPs, then it must ascertain whether Plaintiff has pled adequate facts that, if taken as true, would establish that Defendant acted with actual malice. *See Marcone v. Penthouse Int'l Mag. for Men*, 754 F.2d 1072, 1082 n.4 (3d Cir. 1985) ("The classification of a plaintiff as a public or private figure is a question of law to be determined initially by the trial court."); *Am. Future Sys., Inc. v. Better Bus. Bureau of E. Pa.*, 592 Pa. 66, 84 (2007) ("If the plaintiff is a public official or public figure, . . . and the statement relates to a matter of public concern, then to satisfy First Amendment strictures the plaintiff must establish that the defendant made a false and defamatory statement with actual malice." (citation omitted)).

To determine whether Plaintiff is a "limited public figure," the Court must examine "(1) whether the alleged defamation involves a public controversy, and (2) the nature and extent of plaintiff's involvement in that controversy."[1] *McDowell v. Paiewonsky*, 769 F.2d 942, 948–51 (3d Cir. 1985). On the first prong, a "public controversy" must be a "real dispute, the outcome of which affects the general public or some segment of it." *Monge v. Univ. of Pa.*, 674 F. Supp. 3d

---

[1] Although Plaintiff is a corporate entity, not a person, case law makes clear that corporate entities can be deemed limited public figures. *See, e.g.*, *Steaks Unlimited, Inc. v. Deaner*, 623 F.2d 264, 273–74 (3d Cir. 1980) (finding a meat producer to be a limited purpose public figure regarding the quality of its product where it "invited public attention, comment, and criticism" by engaging in an "advertising blitz" and spent tens of thousands on an advertising campaign through multiple different media channels regarding the quality of its meat); *Schiavone Constr. Co. v. Time, Inc.*, 847 F.2d 1069, 1079 (3d Cir. 1988) (finding a construction company to be a limited purpose public figure because its "actions and associations" with a notorious individual connected to organized crime "invited limited public figure status").

195, 211 (E.D. Pa. 2023) (citation omitted).  In examining the second prong, the Court must consider whether the plaintiff has "actively particip[ated] in the public issue in a manner intended to obtain attention."  *See Marcone*, 754 F.2d at 1083 (noting examples of where courts have found active participation, such as where a meat producer "aggressively advertised its product in the media," or where an agent held "news conferences to attract media attention for himself and his client").  Alternatively, a plaintiff may be deemed a limited public figure if he "undertakes a course of conduct that invites attention, even though such attention is neither sought nor desired."  *See McDowell*, 769 F.2d at 949–50 (holding that an architect who had participated in numerous publicized and controversial building projects—including one that he had bid upon despite knowing its controversial nature—was a limited purpose public figure as to his participation in those projects even if he did not want to be one).  In short, a limited public figure must undertake action that indicates that he has "assume[d] the risk of public attention."  *Ralston v. Garabedian*, 676 F. Supp. 3d 325, 358 (E.D. Pa. 2021).

The Court finds that Plaintiff is not a limited public figure on the topic of AFPs.  Even assuming that the topic of AFPs is a public controversy, none of the materials submitted by Defendant demonstrate that Plaintiff actively participated in that controversy in a manner intended to obtain, or even in a manner that would inadvertently invite, attention.[2]  Being identified in nine

---

[2] The Court will take judicial notice of the materials that Defendant appended to her Motion. All of the materials appended—such as a *Wall Street Journal* article, statements from the *Federal Register*, the *JAMA* article, the AbbVie amicus brief, and other online sources, *see* ECF Nos. 23-3–31—are public records, and are therefore properly judicially noticed by the Court on a motion to dismiss.  *See S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) ("To resolve a 12(b)(6) motion, a court may properly look at public records . . . in addition to the allegations in the complaint.").  In taking judicial notice of these materials, the Court does not do so for the truth of the matters described therein.  *See Sturgeon v. Pharmerica Corp.*, 438 F. Supp. 3d 246, 259 (E.D. Pa. 2020) ("[A]t the motion to dismiss stage, . . . materials will be judicially noticed only for their existence and not for their truth.").  Rather, the Court takes

online reports and a *Wall Street Journal* news article as an AFP—even if it is in the context of discussing and criticizing AFPs—does not show that Paydhealth actively participated in a public controversy, or that Paydhealth affirmatively took any action to invite attention to itself.  *See* ECF No. 23-1 at 23.

Nor are the "two web pages that feature statements by [] Plaintiff [] about AFPs" enough to impose public figure status onto Plaintiff.  *Id.*  Upon close review of the exhibits appended to Defendant's Motion, Paydhealth's commentary in those two web pages was limited and about *itself*—not about the public controversy, or AFPs more generally.  In one news article, Paydhealth commented that it "assist[s] patients with finding all of the charitable assistance available to them under the guidelines and rules established by pharmaceutical companies and their foundations." ECF No. 23-2 ¶ 5; ECF No. 23-3 at 5.  In the other, Paydhealth's Chief Commercial Officer, David Galardi, commented about Paydhealth's advocacy services and use of external funding sources to reduce plan participant costs.  ECF No. 23-2 ¶ 56; ECF No. 23-25.  This limited commentary is insufficient for the Court to find that Plaintiff stepped into the limelight to a degree where it should have expected public attention.  *Cf. Joseph v. Scranton Times L.P.*, 959 A.2d 322, 341 (Pa. Super. 2008) (finding that appellees had not actively participated in the public controversy where their agent's statements to the media were "limited," "not substantive comments" about the controversy, and were not made to "influence the resolution of the outcome of any perceived controversy").

While Defendant argues that Plaintiff "chos[e] to conduct business activities . . . in [the] controversial industry" of health care finance, ECF No. 23-1 at 24, that "choice" cannot be enough

---

judicial notice of these materials to determine whether Plaintiff actively injected itself into a public controversy regarding AFPs, as further described in the analysis above.  *See id.* at 257 ("Such records may only be judicially noticed to show 'what was in the public realm at the time, not whether the contents of those documents are true.'") (citation omitted).

8

to render Plaintiff a public figure. To hold as such would mean that any company working in the "controversial industry" of health care finance would be "automatically transformed" into a limited public figure. *See Wolston v. Reader's Digest Ass'n, Inc.*, 443 U.S. 157, 167–68 (1979) ("A private individual is not automatically transformed into a public figure just by becoming involved in or associated with a matter that attracts public attention."); *Shadle v. Nexstar Broad. Grp., Inc.*, No. 3:13-CV-02169, 2014 WL 3590003, at *8 n.5 (M.D. Pa. July 21, 2014) (finding unpersuasive the argument that the plaintiff is a limited purpose public figure simply because his "commodities business" of "buying and selling gold" is "highly regulated"). Accordingly, Plaintiff is not a limited public figure and therefore need not allege facts showing that Defendant acted with "actual malice."

### C. To state a defamation per se claim, Plaintiff must plead facts sufficient to show general damages.

Finally, Defendant argues that if Plaintiff is not a public figure, then the Complaint should still be dismissed because Plaintiff does not plausibly plead that it suffered general damages.[3] *See* ECF No. 23-1 at 28. While it is true that Plaintiff does not need to plead "special damages" so long as Plaintiff sufficiently alleges that Defendant made defamatory statements that constitute business misconduct—which it does, *see, e.g.*, ECF No. 1 ¶¶ 35, 37—Plaintiff does still need to plead "general damages," or that its "reputation was actually affected by the slander." *See Synygy,*

---

[3] Although Defendant also argues that Plaintiff lacks Article III standing, as Plaintiff has failed to show injury, *see* ECF No. 23-1 at 28, 32, the Court need not address that argument here as it will dismiss the Complaint for failure to plead general damages as discussed above.

Defendant also argues, in a footnote with no analysis, that if the Court finds that Plaintiff is not a limited public figure, the Court should dismiss the Complaint "for failure to plead negligence on the part of Defendant." *Id.* at 29 n.12. The Court will not address this argument and will consider it waived. *See John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("[A]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived.").

*Inc. v. Scott-Levin, Inc.*, 51 F. Supp. 2d 570, 581 (E.D. Pa. 1999) (citing *Walker v. Grand Cent. Sanitation, Inc.*, 430 Pa. Super. 236, 245 (1993)), *aff'd*, 229 F.3d 1139 (3d Cir. 2000).

Here, Plaintiff provides little insight into how Holcombe's allegedly defamatory statements actually harmed Plaintiff's reputation. Indeed, all the Complaint provides is a conclusory allegation that "Holcombe's publication of the defamatory statements caused actual injury to Paydhealth's reputation." ECF No. 1 ¶ 39. Although it is true that Plaintiff need not provide evidence of its general damages, it must still set out "sufficient factual matter to show that [its defamation per se] claim is facially plausible." *Fowler*, 578 F.3d at 210. Plaintiff contends that its Complaint sufficiently specifies the harm Holcombe's defamation caused Paydhealth because the audience "consisted of people who are likely to have or to be able to affect business relationships with Paydhealth." ECF No. 1 ¶ 39. However, the Complaint fails to state how Holcombe's alleged defamation actually harmed Plaintiff's reputation, and instead unsuccessfully attempts to jump to the "obvious conclusion" that Holcombe's statements caused actual injury to Paydhealth's reputation. *Id.*; ECF No. 29 at 8. Without any factual allegations that, if taken as true, could establish its general damages, Plaintiff's defamation per se claim is not plausible.

**IV.   CONCLUSION**

Although Plaintiff is not a "limited public figure" and need not plead allegations that could lead to an inference that Defendant acted with "actual malice"—and, as a private figure who is bringing a defamation per se claim, need not plead facts that would support a finding of "special harm"—Plaintiff still needs to plead allegations that would support a finding of general damages. For these reasons and those explained more fully above, the Court will grant Defendant's motion to dismiss without prejudice to Plaintiff to amend.

**BY THE COURT:**

**/s/ Chad F. Kenney**
_____
**CHAD F. KENNEY, JUDGE**